JUAN MANZANARES ET AL., Plaintiffs and Appellants, *v.* PORTO RICO RACING CORPORATION, Defendant and Appellee.

No. 5464. Argued December 8, 1932.—Decided May 23, 1933.

*Guerra-Mondragón & Soldevila* for appellants.   *M. A. Martínez Dávila* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

Juan Manzanares and others began a suit against the Porto Rico Racing Corporation. On behalf of each plaintiff it was averred that he was entitled to a share in the pool which was the output of the races in the hippodrome owned by the defendant. As explained by us in several other cases, the said pool is awarded to the person or persons who out of seven races manage to pick out and write down on a ticket, turned in to the management, the greatest number of victorious horses. The plaintiffs alleged that in the second, third, fourth, fifth, sixth and seventh races they had ascertained the winning horses and that the first race was annulled by the action of the jury of the hippodrome, the only body which had a right to determine the order in which the horses arrived at the goal; that the said jury never determined what horse did in fact win the first race; that by reason of said annulment each of the plaintiffs was entitled to one or more shares of the pool. It should be explained that whenever a race is annulled and the owner of the ticket ascertains the six other winners he receives a share of the pool for each horse that he waged in the annulled race.

The defendant in its answer accepted a great number of the averments of the complaint. It denied certain matters and in the eighth clause alleged that Leopoldo García, averring that he had correctly divined the seven horses, appealed from the decision of the jury to the Insular Racing Commission, which annulled the decision of the jury; that in a case brought before the District Court of San Juan by the said Leopoldo García against the defendant herein, judgment was rendered in favor of said Leopoldo García as having ascertained the seven races, and the defendant deposited the amount of the pool in court. It appears that the same was turned over to Leopoldo García.

The case was called for trial. The parties interrupted the proceedings to have an opportunity for consultation and then filed a stipulation in court which is as follows:

"The parties appear in court by their respective attorneys and submit the case to the court under the following stipulation:

"1. That they accept the first paragraph of the complaint, with the explanation that at the moment the Quintana Hippodrome is not being run by the Porto Rico Racing Corporation inasmuch as it is leased, but that at the date of the races that corporation was operating the hippodrome.

"2. The second, third, and fourth paragraphs of the complaint are accepted by the defendant.

"3. With respect to the fifth paragraph, the first two facts are accepted and the last is denied; with respect to this last fact the rules of the racing commission and the *expediente* in civil case number 3678, prosecuted by Leopoldo García against the Porto Rico Racing Corporation, before this same court, are submitted.

"4. The sixth and seventh paragraphs of the complaint are admitted by the parties.

"5. The eighth paragraph is submitted with the rules and with the said case of García v. Porto Rico Racing Corporation above mentioned.

"6. The ninth paragraph of the complaint is admitted.

"7. With regard to the tenth paragraph with the acceptation (*sic*) which is related in the said facts (*sic*) it is submitted with the rules and the said *expediente* of García v. Porto Rico Racing Corporation.

"8. The new matter which is alleged in the answer is submitted with the evidence (*prueba*) of the defendant consisting in the said *expediente* 3678 prosecuted by Leopoldo García against the Porto Rico Racing Corporation before this same court. This *expediente* the *defendant* presents with all the documents belonging (pertinent) to this action.

"And the parties ask the court to lend its approval to the present stipulation and in accordance with the documents referred to therein to render the appropriate judgment.

"San Juan, May 28, 1929.

         "(Signed)     Ismael Soldevila, attorney for the plaintiffs.

         "(Signed)     Manuel A. Martínez Dávila, attorney for defendant."

In case number 3678 before the District Court of San Juan, in which Leopoldo García was the complainant and the Porto Rico Racing Corporation the defendant, the complaint

set out that the following horses were the winners of the races of the 6th of March, 1927: first race, Saturnina; second race, Frances Johnson; third race, Pirata; fourth race Sherman; fifth race, Colombina; sixth race, Rin Tin Tin; seventh race, Mrs. Sipi.

This statement was made in the fourth paragraph of the complaint. The said fourth paragraph was admitted by the answer with the exception that the defendant set forth that Saturnina had arrived first but the said race was annulled by the jury. As additional matter of defense the defendant said that after the date of said races the Insular Racing Commision decided that the jury of the Quintana Hippodrome did not have authority to annul the first race.

In the said García case the District Court of San Juan held or found, as the case may be, that as the answer of the defendant did not deny the averment that Saturnina had arrived first, but on the contrary admitted it, with the limitation that the defendant averred that the said race had been annulled by the jury, and also admitted or set up that the action of the jury was annulled by the Racing Commission, García was entitled to recover. The judgment of the District Court after making the usual deductions, awarded the plaintiff, García, the amount of the pool, namely, $12,118.78 and recited that such a payment should be made if the plaintiff showed to the defendant that he had ascertained the seven races, etc., and it would appear that the plaintiff had a ticket which responded to a ticket deposited in the hippodrome with the following horses as winners: Saturnina, Frances Johnson, Pirata, Sherman, Colombina, Rin Tin Tin, and Mrs. Sipi.

In the present case the District Court of San Juan said that the case was submitted to it solely on the evidence of the record of suit number 3678, Leopoldo García v. Porto Rico Racing Corporation, and the rules of the Insular Racing Commission. The court also held as follows:

"Having admitted as evidence in this case the complaint and the answer in the case of Leopoldo García in accordance with the

stipulation under which this case was submitted, there can be no dispute with respect to the facts which flow from the avernments of the said complaint and answer which is presented under oath.''

The court apparently meant that the answer was under oath. It went on to say that as the commission had annulled the decision of the jury the *status quo* was re-established, in other words, that the first race took. place with the horse Saturnina as winner. The court also said that if as a question of fact Saturnina was the winning horse in the first race, as ascertained by Leopoldo García alone, the failure of the jury to determine the order in which the horses arrived did not prevent him from recovering the total amount of the pool.

The appellants presented three assignments of error.

The first was that the District Court of San Juan erred in considering facts set out in the answer of the present suit as proved by facts contained in the complaint and answer of another suit in which the plaintiffs were not parties, even though such pleadings were made under oath.

The second assignment was that the court erred in deciding that the responsibility of the defendant ceased when the defendant deposited the amount of the pool in court.

The third was that the court committed error in letting the defendant go without day when the judgment ought to have been rendered in favor of the plaintiff and defendant should have been mulcted in costs.

We agree with the appellants that the court had no right to rely on the answer in the present case as proof of the issues submitted by the parties. That the court did in fact so rely may be questioned. The answer, however, might be considered by the court in connection with the stipulation of the parties to throw light upon what the parties were admitting as evidence in the case before it.

Likewise the appellants properly (beyond the stipulation) maintain that the suit of García was in no way binding upon the plaintiffs in the present case and we agree with them that

the defendant in the García suit was not absolved from responsibility because it had deposited the amount of the pool in court in that case. In the García case the defendant made no attempt to bring the plaintiffs or other persons claiming the pool into court. There was nothing like an interpleader.

Putting it in a different way, the appellants maintain that the action of the jury forever annulled the first race and that as no one had the right except the jury to make that race count, a situation arose whereby the pool should be awarded to the winners of six races independently of the first race; that it should be considered that the first race became inexistent for the purposes of the distribution of the pool.

A good deal of the discussion is to the effect that the former case was in no sense *res judicata*. The appellee does not dispute this contention. It freely admits that the said suit in itself was not *res judicata,* estopped by judgment or anything of that kind. The appellee maintains that as the former suit was by stipulation admitted in evidence it was proof of the facts found in that suit, namely, according to the appellee, that there was a first race which was won by Saturnina, and that García was entitled to the pool.

The principal contention of the appellants is, we may say, that only six horses were ever shown to be winners on that day or that only six horses were determined to be winners, and that therefore the ascertaining of six horses entitled the plaintiffs to share the pool along with others who might have made a similar ascertainment. The plaintiffs would only have a right to recover if the annulment made by the jury of the first race put that race entirely out of consideration, and the plaintiffs assert that nothing was ever done legally to fix the winner of the first race. They maintain necessarily that the first race was forever eliminated.

The case would be a great deal clearer for solution if the parties had not signed the stipulation. It is somewhat difficult to imagine what would have happened if such a stipulation had not been presented. Certainly we are agreed that

if in the present case the defendant had offered the record in the García case as evidence the plaintiffs could have successfully opposed the admission of any and all parts thereof. The appellants were so convinced of the permanent elimination of the first race that they consented to the admission of the record in the García case. Perhaps the idea of the plaintiffs was that such record had no probative value to help the issue presented by the defendant in this case. To determine what is the effect of the stipulation in this case and how far the record in the García case has a probatory value are the principal questions to be decided in the present appeal.

This seems a convenient moment to consider one of the contentions of appellants, namely, that it does not sufficiently appear in the record how the Racing Commission obtained said jurisdiction to overrule the decision of the jury annulling the first race. Assuming, however, that the undisputed fact is that the Racing Commission did annul the action of the jury, the presumption would be that the commission acted duly and that the intermediate steps to give it the power to annul were taken. The appellants strongly contend that there was no showing that García himself appealed from the decision of the jury annulling the first race. However, that the Racing Commission did so annul the action of the jury is an undisputed fact in this case.

Likewise, *non constat* that the Racing Commission, which is the final authority in racing, could have made the annulment *sua sponte* or on reports that came to it. It is true that the rules give the buyer of a ticket a right to appeal, but that right does not exclude the possibility that the commission might have thought that the jury acted without jurisdiction and thus without an appeal annulled the decision of the jury.

One of the facts which the defendant could clearly have proved in this case was that the Racing Commission did in fact annul the action of the jury. The stipulation made it unnecessary for the defendant to prove that fact. This is some indication of what the intention of the parties was in

making the stipulation they did. In other words, it must be inferred that the idea of both parties was that such facts as were provable by the García record should be considered as evidence. It scarcely could be the intention of the plaintiffs by the stipulation to prevent the defendant from making out such a case as it could. From the slightest inspection of the record in the García case it appears that it was determined therein that Saturnina was the winner of the first race, it matters not for what reason the court arrived at its conclusion.

Some question has arisen in our minds as to what was the nature of the findings and the judgment in the García case. To be sure there was no real adversary pleading or act on the part of the defendant. It did not do what the plaintiffs in this case surely would have done, contest the averment that Saturnina was the winner of the first race. The defendant in the García case specifically admitted that Saturnina was the winner.

Nevertheless, the judgment in the García case was a judgment on the merits. The plaintiff in that case presented a complaint. The defendant answered admitting the essential averments of the complaint and judgment was rendered on the pleadings. As between the parties in that case there was a complete trial on the merits. By reason of the fact that García was handed the amount of the pool the Porto Rico Racing Corporation became forever absolved from paying him any amount of money whatsoever because of his having ascertained either six or seven horses. As to him, the judgment in that case was completely *res judicata* and he was estopped from making any further claim. Such a situation could only arise by a judgment on the merits.

Judgments on the merits arise by default, by demurrer, on the continent by trial before jury and in other ways that it is unnecessary to enumerate. We have not found a specific statement in the books to the effect that a judgment on the pleadings is such a judgment on the merits, but it necessarily follows.

The García case was not merely a judgment on the pleadings. It was a judgment arising by stipulation that the case should be submitted on the pleadings. The Porto Rico Racing Corporation, if the matter became important, could never deny that it had paid Leopoldo García the amount of the judgment as the winner of the pool.

The present case illustrates the point we are making. The judgment herein was rendered on a stipulation. The plaintiffs and appellants strongly contend that the defendant is bound by the admissions of its answer in this case and principally that the jury of the hippodrome annulled the first race. The case of the plaintiffs depends principally upon this admission in the answer. By reason of the stipulation the plaintiffs did not find it necessary to prove that the jury of the hippodrome did so annul the first race. So far as this fact was concerned the proceeding before us is no more adversary than were all the proceedings in the García case.

The appellee disclaims any intention to make the García case *res judicata*. It maintains that the record in that case was evidence tending to show the facts determined in the said case. The appellee cites the cases of *Falero et al.* v. *Falero,* 15 P.R.R. 111; *Nadal* v. *Miranda,* 27 P.R.R. 300; *Succn. of Del Rosario, et al.* v. *Rosaly,* 27 P.R.R. 98; *Rodríguez* v. *P. R. Ry. L. & P., Co.,* 19 P.R.R. 613; *Prentice* v. *Miller,* 82 Cal. 571; and *MacElroy* v. *Williams,* 14 Wash. 627, to the effect that, if unobjected to, any probatory fact may be offered in evidence although it would be incompetent on objection made. At the present moment we are not considering the full force and effect to be given to the findings and judgment in the .García case, but we think the appellee is right when it maintains that they were some evidence to show that Saturnina was the winner of the first race. The opinion and judgment of the court, and the answer of the defendant admitting the essential averments of the complaint, are each one of them hearsay evidence tending to show that Saturnina

did in fact win the first race. This by itself would be dispositive of the judgment of the court below.

Of course we have not lost from sight that the appellants maintain that Saturnina was never legally, so it may be said, the winner of the first race. We say legally because if the appellants were right, in legal effect there was no winner of the first race.

This seems a convenient moment to say that there may be other ways to determine who is the winner of a race other than the specific declaration by the jury of the hippodrome. Everyone knows who has watched the races that a particular horse may come in way ahead of the other horses and no one doubts who is the winner in such a case. Shall it be said that when that fact is an outstanding one there are no ways in the world in which the winner in the race may be determined other than by the specific declaration of the jury? That the Racing Commission has no reserve power to determine a salient fact known by all?

We come then to consider what was the probatory effect of the record or *expediente* in the García case. One of the unquestioned facts here is that the record in that case was admitted by the parties as evidence (*prueba*). Let us suppose that at the trial the defendant had offered in evidence the proceedings in the García case and the plaintiffs had made no objection. What then would have been the effect of the introduction into evidence of the said record? What probatory value could it be said to have as against a stranger to the former case? As to the matters of evidence to which we have hitherto referred we have very little doubt that in the present case it would be hearsay evidence of the facts established in the other suit. The plaintiffs might be relying on the fact that before a judge or a court such hearsay evidence would be lightly considered; in other words, that no great force would be given to it. We may also imagine that the plaintiffs presented an objection to the record as being mere hearsay evidence and the court sustained the objection but

admitted it on other grounds or because no other objection was made to it. Then the question would arise what would be the probative value of the judgment independently of the mere hearsay matter. Of course this situation, if not a much stronger one, arises by reason of the stipulation in this case.

We have made a considerable examination of the authorities as to the force and effect of a previous judgment when offered as *res judicata* in another case. We have done this not because the plea of *res judicata* could possibly be applied but to try to determine what were the facts that could be considered to be proved or which the former judgment tended to prove. We must confess that the reported cases have thrown very little light on this inquiry, so far as we have been able to find. Indeed, ordinarily a judgment is a determination of the rights between the parties rather than the determination of any particular fact or set of facts. Nevertheless, facts or a set of facts must and may be determined by a judgment.

When a plea of *res judicata* is presented by a defendant and the plaintiff denies that there was any judgment determining the rights between the parties then of course it becomes necessary for the defendant to show that the facts of the previous case were the same or at least coincident with the facts attempted to be proved in the second trial; that the issues were the same or that certain matters were necessarily involved. It follows then that the defendant in the second case may offer the record in the first case to show that the facts in each suit were the same or so similar as to make a recovery by the plaintiff impossible. Therefore, at least under a plea of *res judicata* the proceedings in the former case have a definite probatory value. Does this mean that they only have a probatory value for the purposes of the plea of *res judicata* or that they have a probatory value as a matter *in pais;* in other words, that a particular thing happened? The real objection to the record in the former case is probably, if not certainly, that the record in the first case was as to a stranger who had no relation to the first suit and

was not a privy to either of the parties irrelevant to the issues in the second case. The first action was originally entirely *res inter alios acta* as regards the plaintiffs herein. Where the question is whether the winner of six races is entitled to the pool, a judgment awarding such pool to the winner of seven races can not be entirely irrelevant as a general fact. It may be irrelevant as against a particular person, but it is evidence tending to show that the pool was awarded to the winner of seven races. Mr. Wigmore says, speaking of the record of a previous case between the same parties or the like:

". . . It is rather the *lending of the Court's executive aid, on certain terms,* to a claimant or a defendant, *without investigation* of the merits of fact."

2 Wigmore on Evidence, 2d ed., page 1019.

One can not examine the jurisprudence with respect to the effect of a previous record without considering that such record is evidence for the purpose of the plea of *res judicata.* It may not of itself prove certain facts determined by the previous judgment. Perhaps the best way of putting it is to say, despite the criticism of Mr. Wigmore, that the judgment is evidence of the rights determined by the decision of the issue or issues in the previous case.

Agreeing, as we do, that this is not a case of a plea of *res judicata,* we have to determine the effect of the previous judgment independently of the rules laid down in such cases. It may be said that because this is not a case of *res judicata,* the suggestions or criticisms of Mr. Wigmore are not applicable.

In passing we might say that even under the principles of *res judicata* the right determined in the previous case was that García was entitled to the pool by having ascertained the winners in the seven races.

There are several approaches to determining the effect of the stipulation filed in this case. So far as the plaintiffs were

concerned the stipulation may be deemed to be their admissions or declarations. We have already drawn attention to the fact that it is partly due to the stipulation that the appellants are shown to be the ascertainers of six races; that the jury of the hippodrome annulled the first race, and that the Racing Commission declared the jury without jurisdiction. All these facts are necessarily admitted by the appellants. Solemn admissions or declarations have the same effect as evidence. The stipulation more specifically admitted that the record in the previous case was proof. If these premises are correct it follows that the record in the previous cases was at least some evidence of the fact that there were winners in seven races and that Saturnina won the first race. Necessarily, as we have intimated, the record in the García case was not binding on the appellants in this case and they could have shown the facts to be otherwise. They made not such attempt but apparently rested on the idea that the first race was forever annulled. With these admissions or declarations before it the District Court of San Juan had a right to believe that there had been seven races and that Saturnina won the first race.

We have so far been regarding the stipulation somewhat as an incidental affair, but it is the principal feature of the case. The parties to avoid a trial got together and stipulated as to what should be considered as evidence in the case. The effect of such a stipulation was to do without a trial, or, as said in some cases, to dispense with a jury.

Therefore, the stipulation in this case distinctly put into evidence the record in the former case for what it was worth. In the record in the former case there was evidence tending to show that Saturnina had won the first race. In other words, it was the intention of the parties by the stipulation that the facts proved in the García case, although possibly not conclusive, should have a probatory value in the present suit.

To resume. Of itself the record in the former case was not *res judicata* as the phrase is to be interpreted. The principles of *audi alteram partem* fundamentally prevent this. The other side must be heard. Similarly, as the other side must be heard, the stipulation gave the defendant certain advantages or rights in the nature of proof. Otherwise the effect of the stipulation would be to deprive defendant of its day in court.

Even if the evidence of the winning of the first race by Saturnina or any other particular horse should be excluded from our consideration, nevertheless, we would feel bound to hold that the plaintiffs had failed to make out a case. As we have seen they definitely admitted that there were seven races, that the jury annulled or attempted to annul the first race and that the Racing Commission declared that the jury had no jurisdiction to annul the first race. Then the fact would remain that it was the duty of the plaintiffs to prove that they were entitled to the proceeds of the pool. This they could not do without showing that the first race could not be counted in any way whatsoever. We hold that this possibility was not excluded by the supposed annulment of the first race by the jury.

The appellants maintain that it was only the jury that had a right to determine the winner in the first race. Conceding this much the possibility is not excluded that the determination of the winner of the first race could still be made. Because of their failure to show that the winner of the first race could not have been legally determined, the plaintiffs are in the situation of not having made out a complete case.

The judgment will be affirmed.

Mr. Chief Justice Del Toro concurs in the judgment.

Mr. Justice Hutchison dissented.